*86 OPINION of the Court, by
Judge Losan. —
-This ge wa3 decided at the fall term, 1810, upon the ground that all necessary parties were not before the It is now brought up with additional parties, ^ embarrassed, with bills of exceptions presenting se-vera!, preliminary and,, subordinate paints, winch must first be disposed of.
■/, The first in order, arises upon a motion to continue the cause, because the answer of one of the defendants had just been filed, without time toufake other deposi-^on§ er farther preparation formal.
A party not affe&ed by an order of pubU-cation, proof of its advertisement or the manner of taking the bill to* contefied, cannot objeét té thofe proceedings as irregular.
An order of publicatiunmaj be made againft Jieirs whofé names are unknown.
The certificate of aftnagif. trate that the parties confcnt. ed to the taking of a depofition, is not evidence of the content* But circum-ftances may be fufficient to pre. fume confent, ■⅛ fuch confent proven would warrant theread ing of the de-pofitlon.
Depofitions read on the trial in the court be* low without ob. je&iori, cannot, be reje&ed in appellate court*
A perfon who inhisdepoficion difclaims all in. tereft in the con troyerfy, * need not be iha^á party.
• "Fhí& question must tara uftdn the dffsítptíiclucbd by the answer fft relation to' the appellants Éy the fulls of equity, as well as the express agreement of the ap; pallée, this answer could not be given'in evflftnee against the5 appellant. It could affect the right only as be'tween the appellee and ⅜€ respondent; and therefore did not change the attitude of the appellant; and consequently furnished no ground for a continuance of the cause.- ,
The second question presented, is founded on an objection bf the appellant to the proceedings against the heirs of William Henderson, arising from the -order of publication, the proof of its advertisement, and the manner of taking the bill as confessed. The right of the appellant to object to proceedings against nonresident defendants, which do not affect himself, cannofbe admitted ; because the opinion of the court would not conclude those defendants on points particularly relating. to, and affecting their rights ; And might therefore prematurely and improperly prejudge questions which may hereafter be brought before the court by the interested and proper persons. The impression, however, of the court is, that the proceedings are legal in relation ⅜0 the heirs of Henderson; The act of 1802, “ to reduce into one the several acts for the conveyance and division of landS| ’ justifies proceeding against heirs* whose names are unknown in certain cases, which we are inclined to believe applicable to the present case* -Besides, a description of nonresident defendants, ⅜⅜ the hairs and legal representatives of such decedent, through whom they derive title; seems-sufficient to justify proceeding againstthem. "
3d. An objection was;taken to the reading of the deposition of James Fulton---ist, because it was taken before one magistrate only, whose certificate of its having been done by consent1 is not proper evidence of the fact; and 2d, because of bis incompetency on the ground of interest. ,
' Both of these grounds shall be examined. The first is'relied on, because there was no law authorising a single magistrate to take and certify a deposition ; ánd that the certificate, therefore, watf not competent evi-:dénce óf ati agreement between the, parties f® take the deposition before onei magistra’te. The decision of this courtia the case of Gillespie vs. Gillespie, (2 vol. 90) is *88 reliedíra as applying to this case. The insufficiency of the magistrate’s certificate to establish the consent of the party, cannot bé doubted, either upon principle or the score djl authority. But what circumstances shall be sufficient to justify the presumption and legal inference that such consent was given, may forrti a distinct question for decision. That the pasties might give their consent to take the deposition before one magistrate, is not questioned ; and that such consent or agreement duly proven to the court, would warrant the reading the deposition, seemis equally clear.
The deposition of Fulton had been taken and read Upon the former trial of this cause without objection. Being read in the court below without objection, it could not be rejected in' the appellate court; because the objection being waived below, was either an express or implied consent that it should be read; and the consent being once given that it should be read on the final hearing of the cause, it ought not to be permitted the party at Will to object thereafter, because great injustice and injury might result from the party’s own act thus exercised. But if the parties had agreed to take the deposition before a single magistrate, they were bound thereby, and neither could at pleasure withdraw his consent or reject his agreement.
With' respect to the objection to the deposition on the score of interest, it is clearly unwarranted from the evidence. Fulton had purchased the lot when it was of little value, kept it many years Until it had greatly increased in value, and being about to sell it for ¿160, but owing to the situation of title, was prevented ; when the appellee, who had sold him the lot, agreed to give the price of ¿160, and take back the lot. This was truly reinstating the parties, without responsibility or interest on the part of the first purchaser; and he was consequently ascompetent then to give evidence, as he.had heen before his purchase.
A %Utth point for examination, before me approach the merits of this cause, is, that Fulton should have 'been made a party, as well as, the other mesne purchasers.
It is sufficient that a party who may be interested, is ⅛ any shape before the court, which shows conclusively t&at he disclaims all interest is the controvert- *89 id property. Whether this be by answer, or appears from his deposition in the cause, does not seem so material as to require that he should be made a party. It is true a difference may be conceived®) exist between possible effects, which might result from his deposition, and his answer and the decree of the court thereon. But when from his deposition it appears that he had purchased, and afterwards cancelled the contract with his vendor, we think it not essential to make him á party in the cause. This point, indeed, would seefti to have been settled upon the former trial of the cause. The decree of the court below was reversed for want of all the necessary parties : certain persons were deemed indispensable as parties; they were pointed' out in the reversing decree ; but Fulton was not thought necessary to be made a party, and it is conceived that opinir on should be regarded as operating upon the point now. Upon the whole, we think the objection not tenable, and proceed, therefore, to an examination of the merits of the canse. .
Johnson was the original proprietor of an in and an out lot in the town of Lexington. Henderson claimed both under him. Rankin, the appellee, derives his right through Henderson, and exhibits, his bill in chancery to recover a conveyance of the out lot. The questioti is, whether Johnson sold this lot to Henderson ?
Johnson denies positively that he ever sold the lot to Henderson, or executed to him any writing for it. He states that he gave the in lot to Henderson’s wife, and gave a writing which authorised the execution of a deed of conveyance from the trustees of the town. It is relied on, on the part bf Johnson — 1st, That if both lóts had been disposed of by him to Henderson or wife, that the writing evidencing the sale of the one, would also have mentioned that of the other. 2d, That Mrs. Clark, formerly the wife of Henderson, if her husbatid had purchased the out lot in or about the year 1783,j^(je time the purchase is alleged to have been mader>{would have had some knowledge of the purchase, JohV.soa having lived in the family : whereas she knew nothing ©f such a purchase — had found no writing in relation to said lot, although she had hpd the papeíé of her former husband carefully examined. 3d, That in the year 1785,.he. had sold this lot to a Mr. Fauntleroy, bat sf- *90 terwards cancelled the contract. And 4th, Thai others acquainted with Henderson and Johnson, and who possessed somq knowledge of their transactions and property, are Ignorant of any such sale or transfer of this lot between them. These circumstances seem to form the negative e vidence to a recovery against the appellant.
That Henderson Sold these lots, with some others in Lexington, to James Wallace, who sold the -one in question to the appellee, seems to form no ground of dispute. Possession of this lot was taken bj- the appel-lee, and Fulton, who claimed under'him, about fifteen years before the commencement of this suit, without interruption or claim from the appellant, who has generally resicted within 15 or 20 miles of Lexington, until at length, on discovering that a conveyance had never been made from the trustees of the town, and that the lot stood recorded in the plan of the town as belonging to Johnson, application was made to him by Fulton for some writing which would justify the trustees in executing a deed of conveyance to him.
This Johnson refused to give, but as Fulton deposes, he refused because, as he said, it might injure the heirs of Henderson ; for he had sold the lot to Henderson, or might rather say had given it to him, and executed his writing for the same. Johnson.upon this point states in his answer, after a positive denial that he had sold or given any writing for this lot, that he informed Fulton that he did not recollect ever to have disposed of his out lot to any person, but that if he had disposed of it at all it was to Henderson ; that he would think of it, and meet him at the next sitting of the trustees, and that if he could be made sensible that he had sold it, he would give the necessary writing, but refused then to give any writing, as the heirs of Henderson might be injured if he had sold it to their father.
It is in proof that in the year 1783, the witness was called on to draw an instrument of writing'between William Henderson and James Wallace, for some lots in' Lexington, among which were two originally the property of Samuel Johnson ; at which time Henderson produced an assignment from Johnson, which he shewed to Wallace, who handed the same to the deponent, and asked him if it would do? That he remembers that he then thought every thing was “straight and fair,” *91 and he drew the writing between the parties. That af-terwards in a conversation in Lexington with Johnson and others, respecting the progress'and improvement of said town, in speaking of their respective sales of lots as having been in a measure given away, “ well,” replied Johnson, “ I would have had property here yet, had I not owed or been indebted to William Henderson.”
Another witness deposeth, that being about to purchase the out lots of a Mr. Wallace, to whom William Henderson informed him he had- sold all his Lexington property, he recollects to have examined the title papers, and compared them with the books of the trustees, then in the possession of his brother, who was their clerk, and found the papers to stand fair to Wallace, hut owing to a difference with regard to payment did not purchase.
Wallace, the defendant, admits the sale of an in and out lot to the complainant, but states that at the time of the contract no particular out lot was specified, though afterwards‘the one in controversy was agreed on. He states that he believes that Henderson delivered to him the writing on Johnson for the lot in dispute, and that if he did, by some accident it has been lost. These statements, however, cannot be taken against Johnson : they shew the transaction only as between Henderson and Wallace.
Under this state of facts, Rankin has resorted to equity for a specific execution. Combining the circumstances of Johnson’s confessions, that he should yet have had property in Lexington, had lie not owed Henderson ; of his having given an assignment or writing for said lot to Henderson ; of the witness’s impressions that the right seemed fairly deduced to said lot j and the strong support inferable from an undisturbed posséssion of the lot under the same right, whilst Johnson was within convenient distance of the property and knew its value, until his own impressions on the side of Henderson’s heirs, are for the first time awakened to his own interest from the unexpected news that no writing could be found; the circumstances are too strong and convincing to be resisted upon the ground of ordinary probabilities, and the objections too apparent and easily traced, to refuse the aid required.
Decree affirmed.